FILED BY __KS__ D.C.

Jan 27, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **22-20025-CR-BLOOM/OTAZO-REYES**

16 U.S.C. § 3372(d)(1)
16 U.S.C. § 3373(d)(3)(A)(i)
18 U.S.C. § 371
18 U.S.C. § 554
18 U.S.C. § 2

UNITED STATES OF AMERICA

v.

CHUN KU,

                **Defendant.** /

## INFORMATION

The United States Attorney for the Southern District of Florida and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice (hereinafter collectively referred to as the "Government") charge that:

### GENERAL ALLEGATIONS

At all times material to this Information:

1. The Lacey Act makes it unlawful for any person to make or submit any false record, account, or label for, or any false identification of any wildlife, including reptiles and any part, product, egg, or offspring thereof, which has been, or is intended to be, imported, exported, transported, sold, purchased, or received from any foreign country; or transported in interstate or foreign commerce. 16 U.S.C. § 3372(d)(1) and (2).

2. The Lacey Act defines "wildlife" as "any wild animal, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean,

arthropod, coelenterate, or other invertebrate, whether or not bred, hatched, or born in captivity, and includes any part, product, egg, or offspring thereof." 16 U.S.C. § 3371(a).

3. In order to protect certain species against over-exploitation, the United States became a signatory to an international treaty known as the Convention on International Trade in Endangered Species of Wild Fauna and Flora (hereinafter "CITES"). Appendix I of CITES includes species which are threatened with extinction and for which trade must be subject to particularly strict regulation and for which no trade is allowed for commercial purposes. CITES, Art. II at ¶ 1. Appendix II of CITES includes wildlife species that although not necessarily threatened with extinction now, may become so unless trade in specimens of such species is strictly regulated. CITES, Art. II at ¶ 2.

4. The United States Fish and Wildlife Service ("USFWS"), Department of the Interior, is designated by Congress pursuant to the Endangered Species Act ("ESA"), Title 16, United States Code, Section 1537(a), as the CITES enforcement authority within the United States. The Department of the Interior publishes regulations to implement CITES in 50 C.F.R. Part 23. A list of all species protected by CITES and the ESA implementation program is maintained pursuant to the Convention by the CITES Secretariat. 50 C.F.R. §§ 23.7 and 23.9.

5. The provisions of CITES are implemented through the ESA, which states in relevant part, "It is unlawful for any person . . . to engage in any trade in any specimens [of wildlife] contrary to the provisions of ... [CITES] or to possess any specimens [of wildlife] traded contrary to the provisions of ... [CITES]." "Trade" means, among other things, "export." CITES, Art. I at ¶ (c). "Specimen" means "any animal ... whether alive or dead." CITES, Art. I at ¶ (b).

6. Ball pythons (*python regius*), boa constrictors (*boa constrictor imperator*), Sumatra short-tailed pythons (*python curtus*), common iguanas (*iguana iguana*), argentine tegus (*salvator*

*rufescens*), and common tegus (*salvator merianae*) are protected under Appendix II of CITES. Before exporting a specimen of any animal protected under Appendix II of CITES from the United States, a valid CITES export permit must be obtained. CITES, Art. IV at ¶ 2; 50 C.F.R. § 23.20(c). A separate original or a true copy of a CITES document must be issued before the export occurs and the document must accompany each shipment. 50 C.F.R. § 23.26(b).

7. In order to streamline the *exportation* of captive bred reptiles, the USFWS created the CITES "Master File" permitting program. Master File permits allow reptile breeders to obtain multiple partially completed CITES export documents at one time, thus eliminating the need to individually apply for documentation for each single export. 50 C.F.R. §§ 13.11 and 23.51.

8. A "Master File" permit issued by USFWS pursuant to CITES is valid during the period specified on the face of the permit, and by its terms, reptile breeders are not allowed to export CITES protected reptiles (snakes, turtles, geckos, etc.) captured in the wild. 50 C.F.R. §§ 13.21 and 23.54; *see also* USFWS Form 3-200-85.

9. Reptile breeders must submit a CITES Form 3-201A (the CITES Permit) to the USFWS with each reptile shipment they intend to export. By submission of this form, the reptile breeder certifies that all reptiles covered by the permit were bred and hatched from parental stock maintained at their facility. 50 C.F.R. § 23.26.

10. All exports of wildlife must be accompanied by a USFWS Form 3-177, a Declaration for Importation or Exportation of Fish or Wildlife, listing among other things, the species and applicable CITES permit numbers. 50 C.F.R. § 14.63.

11. In order to facilitate the commercial export process, many businesses employ the services of a customs broker. Customs brokers are regulated and empowered by U.S. Customs and Border Protection ("CBP") to assist importers and exporters in meeting U.S. government

requirements governing imports and exports. However, with respect to exporting wildlife, the exporter employing a Master File permit is responsible for ensuring that all invoices, export forms and CITES declarations are true and correct since the wildlife must originate from his parental stock, located at his facility.

12. **CHUN KU** is a resident of Miami, Florida, who owns and operates a business known as Dynasty Reptiles, located in Miami, Florida. Through his business, **KU** breeds, stores, receives, sells, and exports reptiles.

13. **KU** currently holds a CITES Master File permit, No. 203001 (Master File) which is valid until July 12, 2023. **KU** d/b/a Dynasty Reptiles has been a CITES Master File permit holder from 2008 to the present. Prior to issuance of the Master File permit, **KU** was required to submit to USFWS photographs of his facility, documentation as to where his parental stock came from, the estimated production capacity of specimens, the anticipated volume of export of specimens, and the normal mortality rates for specimens at the facility. Pursuant to his Master File permit, **KU** is allowed to breed certain reptiles from his certified parental stock (bred in captivity) for commercial sale and export.

14. On July 13, 2020, **KU** renewed his Master File permit for specific captive bred species reared from his facility in Miami, Florida. The renewal letter from USFWS authorized **KU** only to export bred-in-captivity specimens of ball python (*python regius*), boa constrictor (*boa constrictor imperator*), Sumatra short-tailed python (*python curtus*), common iguana (*iguana iguana*), argentine tegu (*salvator rufescens)*, and common tegu (*salvator merianae*). The renewal letter declared that: (1) **KU** was the only one authorized to export under that Master File permit; (2) **KU** was authorized only to export bred-in-captivity specimens produced at **KU**'s business;

and (3) **KU** was prohibited from allowing the permits issued under the Master File permit to be used by, given to, or shared with anyone else.

15. Co-conspirator Daisuke Miyauchi was a resident of Yokohama, Japan, who owned and operated a business known as Maniac Reptiles.

16. Through Maniac Reptiles, Miyauchi offered for sale various snake species, lizard/gecko species, and turtle species, including but not limited to, ball pythons (*python regius*), boa constrictors (*boa constrictor imperator*), Sumatra short-tailed pythons (*python curtus*), common iguanas (*iguana iguana*), argentine tegus (*salvator rufescens*), and common tegus (*salvator merianae*), all of which are CITES II species.

17. Miyauchi secured a significant portion of his reptile inventory from individuals and businesses in the United States.

18. Unindicted Co-conspirator 1 operated a business in Davie, Florida, through which he bought, sold, and bred reptiles.

19. Unindicted Co-conspirator 2 is a resident of Mongkok, Hong Kong, and owns and operates a business through which he sold, among other reptiles, ball pythons (*python regius*), common iguanas (*iguana iguana*), argentine tegus (*salvator rufescens*), and common tegus (*salvator merianae*), all of which are CITES II species.

20. Unindicted Co-conspirator 2 secured a significant portion of his reptile inventory from individuals and businesses in the United States.

21. Between on or about October 17, 2014, and on or about August 27, 2021, **KU** exported or attempted to export at least 45 shipments of wildlife to Miyauchi under his Master File permit.

22.     Between on or about December 1, 2017, and on or about August 11, 2021, **KU** exported or attempted to export at least 20 shipments of wildlife to Unindicted Co-conspirator 2 under his Master File permit.

**COUNT ONE**
**Conspiracy**
**(18 U.S.C. § 371)**

23.     The General Allegations section of this Information is re-alleged and incorporated by reference herein, as though set forth in its entirety.

24.     Beginning on or about July 30, 2013, the exact date being unknown, and continuing up to and including August 27, 2021, in the Southern District of Florida and elsewhere, the Defendant,

**CHUN KU,**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Daisuke Miyauchi, Unindicted Co-conspirator 1, Unindicted Co-conspirator 2, and other persons both known and unknown to the Government, to commit certain offenses against the United States, that is:

   a.   to make and submit any false record, account, and label for, and any false identification of any wildlife, including reptiles and any part, product, egg, and offspring thereof, which has been, and is intended to be, exported, in violation of 16 U.S.C. §§ 3372(d)(1) and 3373(d)(3)(A)(i); and

   b.   to fraudulently and knowingly export and send from the United States any merchandise, article, and object contrary to any law and regulation of the United States, in violation of Title 18, United States Code, Section 554.

**Purpose of the Conspiracy**

25.     The purpose of the conspiracy was for the Defendant and his co-conspirators, known and unknown to the United States, to smuggle CITES Appendix II protected species and other wildlife for financial gain.

**Manner and Means of the Conspiracy**

26. The manner and means by which the Defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

    a. In furtherance of the conspiracy and to effect the illegal objects thereof, **KU** agreed to allow Miyauchi and Unindicted Co-conspirator 2 to use his Master File permit to export reptiles in exchange for consideration in the form of money or commitment to purchase reptiles from **KU**.

    b. In furtherance of the conspiracy and to effect the illegal objects thereof, Miyauchi and Unindicted Co-conspirator 2 traveled frequently to the United States to attend reptile shows and to make purchases of reptiles for their businesses.

    c. In furtherance of the conspiracy and to effect the illegal objects thereof, Miyauchi and Unindicted Co-conspirator 2 contacted **KU** and provided details regarding their respective purchase plans in advance of arriving in the United States, to allow **KU** the necessary time to complete the fraudulent export paperwork.

    d. In furtherance of the conspiracy and to effect the illegal objects thereof, after purchasing the reptiles in the United States, Miyauchi and Unindicted Co-conspirator 2 sent messages to **KU** listing their respective purchases during that particular trip. **KU** used that information to prepare fraudulent export forms declaring that all of the CITES II reptiles came from his captive-bred stock.

    e. In furtherance of the conspiracy and to effect the illegal objects thereof, after purchasing reptiles in the United States, Unindicted Co-conspirator 2 would arrange for the shipment and delivery of his reptile purchases to be sent either to a FedEx hub from where **KU** would retrieve the reptiles, or to **KU**'s warehouse. Upon receipt, **KU** would prepare the fraudulent

7

export documents and would then deliver the reptiles and export documents to a customs broker who, in turn, submitted the fraudulent paperwork, including USFWS Form 3-177, and CITES Form 3-201A, to the USFWS.

   f. In furtherance of the conspiracy and to effect the illegal objects thereof, after purchasing reptiles in the United States, Miyauchi would either arrange for the reptiles to be shipped to the residence of Unindicted Co-conspirator 1 who would care for the reptiles until Miyauchi arrived, or Miyauchi would personally transport the reptiles to the Miami area.

   g. In furtherance of the conspiracy and to effect the illegal objects thereof, upon arriving in the Miami area, Miyauchi transported the reptiles to the business location of **KU**, personally repackaged the reptiles, obtained the fraudulent export documents from **KU**, and then delivered the reptiles and export documents to a customs broker who, in turn, submitted the fraudulent paperwork, including USFWS Form 3-177, and CITES Form 3-201A, to the USFWS.

### Overt Acts

27. In furtherance of the conspiracy, and to effect the objects and purpose thereof, there were committed and caused to be committed by at least one of the co-conspirators herein, within the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

   a. On or about October 17, 2014, Miyauchi and **KU** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least ninety-seven ball pythons (*python regius*)) were bred and hatched from parental stock maintained at **KU**'s business.

8

b.  On or about March 25, 2016, Miyauchi and **KU** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least one hundred eighty ball pythons (*python regius*)) were bred and hatched from parental stock maintained at **KU**'s business.

c.  On or about March 23, 2018, Miyauchi and **KU** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least forty-nine ball pythons (*python regius*)) were bred and hatched from parental stock maintained at **KU**'s business.

d.  On or about September 13, 2019, **KU** and Unindicted Co-conspirator 2 caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least eleven Argentine tegus (*salvator rufescens*)) were bred and hatched from parental stock maintained at **KU**'s business.

e.  On or about October 30, 2020, **KU** and Unindicted Co-conspirator 2 caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least five Argentine tegus (*salvator rufescens*), and ten Common tegus (*salvator meriane*)) were bred and hatched from parental stock maintained at **KU**'s business.

f. On or about November 20, 2020, Miyauchi and **KU** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least twenty Sumatra short-tailed python (*python curtus*)) were bred and hatched from parental stock maintained at **KU**'s business.

g. On or about April 22, 2021, Miyauchi departed from Japan by commercial air carrier and arrived in Detroit, Michigan.

h. On or about April 24-25, 2021, Miyauchi attended the North American Reptile Breeders Conference - Arlington Texas Reptile Show, and met with various vendors, including a vendor with the initials "S.B."

i. On or about April 28, 2021, Miyauchi caused FedEx to deliver four parcels, addressed to Miyauchi, to the residence/business location of Unindicted Co-conspirator 1. The parcels contained eleven ball pythons (shipped by "S.B."), and various species and quantities of geckos.

j. On or about April 29, 2021, Miyauchi loaded and transported reptiles from the residence/business location of Unindicted Co-conspirator 1 by rental car, to **KU**'s business's warehouse in Miami, Florida, where he repacked the reptiles into five boxes.

k. While at **KU**'s business, Miyauchi met with **KU**, who provided Miyauchi with fraudulent export paperwork.

l. Thereafter, on or about April 29, 2021, Miyauchi traveled directly from **KU**'s business to a customs broker in Miami, Florida, where he dropped off the five boxes of reptiles.

m. On or about April 30, 2021, Miyauchi and **KU** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer, to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, one hundred seventeen ball pythons (*python regius*), and ten Sumatra short-tailed pythons (*python curtus*)) were bred and hatched from parental stock maintained at **KU**'s business.

n. On or about April 30, 2021, Miyauchi concealed three Australian knob-tailed geckos within the boxes containing the reptiles described in paragraph (m) above and did not declare the geckos as required by law in any of the export paperwork.

o. On or about July 15, 2021, **KU** and Unindicted Co-conspirator 2 caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least nine Common tegus (*salvator meriane*)) were bred and hatched from parental stock maintained at **KU**'s business.

p. On or about August 27, 2021, Miyauchi and **KU** caused to be submitted a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least two hundred ball pythons (*python regius*)) were bred and hatched from parental stock maintained at **KU**'s business.

All in violation of Title 18, United States Code, Section 371.

m. On or about April 30, 2021, Miyauchi and **KU** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer, to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, one hundred seventeen ball pythons (*python regius*), and ten Sumatra short-tailed pythons (*python curtus*)) were bred and hatched from parental stock maintained at **KU**'s business.

n. On or about April 30, 2021, Miyauchi concealed three Australian knob-tailed geckos within the boxes containing the reptiles described in paragraph (m) above and did not declare the geckos as required by law in any of the export paperwork.

o. On or about July 15, 2021, **KU** and Unindicted Co-conspirator 2 caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least nine Common tegus (*salvator meriane*)) were bred and hatched from parental stock maintained at **KU**'s business.

p. On or about August 27, 2021, Miyauchi and **KU** caused to be submitted a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least two hundred ball pythons (*python regius*)) were bred and hatched from parental stock maintained at **KU**'s business.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

### Lacey Act - False Record
### (16 U.S.C. §§ 3372(d)(1) and 3373(d)(3)(A)(i))

1. The General Allegations section of this Information is re-alleged and incorporated by reference herein, as though set forth in its entirety.

2. On or about April 30, 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the Defendant,

**CHUN KU,**

did knowingly make and submit, and did cause to be made and submitted, a false record for and false identification of wildlife, that is, ball pythons (*python regius*) and Sumatra short-tailed pythons (*python curtus*), in that the Defendant **KU** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **KU**'s business as the exporter and Maniac Reptiles, Yokohama, Japan, as the foreign importer to be filed with USFWS and CBP, certifying that the reptiles covered by the permit (to wit, one hundred seventeen ball pythons (*Python regius*), and ten Sumatra short-tailed pythons (*python curtus*)) were bred and hatched from parental stock maintained at **KU**'s business, when in truth and in fact, as the Defendant then knew, said wildlife was not captive-bred at his facility, said wildlife having been and intended to be exported, all in violation of Title 16, United States Code, Sections 3372(d)(1) and 3373(d)(3)(A)(i) ~~and Title~~ 18, United States Code, Section 2.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Thomas Watts-FitzGerald
Assistant United States Attorney

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources Division

Banumathi Rangarajan
Trial Attorney
Environmental Crimes Section

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CHUN KU

_____Defendant._____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
- ✓ Miami
- ___ FTL
- ___ Key West
- ___ WPB
- ___ FTP

New defendant(s)          Yes ___ No ___
Number of new defendants   ___
Total number of counts     ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)   Yes
   List language and/or dialect   Japanese

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   0 to 5 days      ✓
   - II  6 to 10 days
   - III 11 to 20 days
   - IV  21 to 60 days
   - V   61 days and over

   (Check only one)
   - Petty
   - Minor
   - Misdem.
   - Felony   ✓

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge                     Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No.
   Related miscellaneous numbers:   21-MJ-02550-TORRES, 21-MJ-02530-MCALILEY, 21-MJ-03643-03649-BECERRA
   Defendant(s) in federal custody as of
   Defendant(s) in state custody as of
   Rule 20 from the District of

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ___ No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ___ No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   Yes ___ No ✓

_____
THOMAS WATTS-FITZGERALD
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0273538

*Penalty Sheet(s) attached

REV 6/5/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** CHUN KU

**Case No:** _____

Count #: 1

Conspiracy to Smuggle Wildlife

Title 18, United States Code, Section 371

* **Max. Penalty:**      Five (5) years' imprisonment

Count #: 2

Making False Records

Title 16, United States Code, Section 3372(d)(1) ; 3373(d)(3)(A)(i)

* **Max. Penalty:**      Five (5) years' imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| Chun Ku | ) | |
| | ) | |
| *Defendant* | ) | |

**WAIVER OF AN INDICTMENT**

    I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

    After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*